08-1225-cv
K.L.A. v. Windham Southeast Supervisory Union

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 30th day of March, two thousand ten.

Present:

> RALPH K. WINTER,
> ROBERT A. KATZMANN,
>     *Circuit Judges,*
> JED S. RAKOFF,
>     *District Judge.*[*]

_____

K.L.A., by next friend B.L., by next friend R.A.,

    *Plaintiff-Appellant,*

        v.                    No. 08-1225-cv

WINDHAM SOUTHEAST SUPERVISORY UNION,
DUMMERSTON SCHOOL DISTRICT,

    *Defendants-Appellees,*

_____

[*] The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

ENE EVALUATOR,

    *Defendant.*

---

| | |
|---|---|
| For Plaintiff-Appellant: | EILEEN M. BLACKWOOD, Kohn Rath Blackwood & Danon, LLP, Hinesburg, VT |
| For Defendants-Appellees: | PATTI R. PAGE, Stitzel, Page & Fletcher, P.C., Burlington, VT |

      Appeal from the United States District Court for the District of Vermont (Niedermeier, M.J.).

      **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the order of the district court be and hereby is **AFFIRMED**.

      Plaintiff-Appellant's action stems from the failed attempt to formulate a mutually agreeable Individual Education Plan ("IEP") for K.L.A., the student at the heart of this case, who suffers from pervasive development disorder-not otherwise specified (PDD-NOS). After a due process hearing was completed upon request of K.L.A.'s parents, the Hearing Officer concluded in a his Findings of Fact, Conclusions of Law, and Order dated November 15, 2005 that the proffered IEP by Windham Southeast Supervisory Union and the Dummerston School District (collectively "the District") was substantively appropriate for K.L.A.'s educational needs and that there was no procedural defect that would render it invalid. Seeking further review, the parties consented to Magistrate Judge Jerome J. Niedermeier sitting as the judge on the case. On February 14, 2008, Judge Niedermeier issued an Opinion and Order affirming the Hearing Officer's decision. In finding that the record fully supported the Hearing Officer's conclusions, the district court determined that, pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1400, *et seq.* ("IDEA"),[1] the proffered IEP provided a "free and appropriate public education" ("FAPE") in the "least restrictive environment" ("LRE"). This appeal followed. We assume the parties' familiarity with the facts and specification of issues on appeal.

"Whether the district court correctly applied the IDEA's statutory and regulatory provisions to the facts of a particular case is a mixed question of law and fact, which we . . . review *de novo*." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir. 2005). We are nevertheless obliged to ensure that the district court has given "due weight" to the state administrative proceedings in light of the school authorities' knowledge and expertise. *See id.*; *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007). Indeed, as the Supreme Court has stated, review in this context "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982); *see also Karl v. Bd. of Educ.*, 736 F.2d 873, 877 (2d Cir. 1984) (reversing lower court for, *inter alia*, insufficient deference). Moreover, where, as here, the district court's determination is based entirely on the evidence in the administrative record, we must ensure that the district court has been sufficiently deferential. *M.S. ex rel. S.S. v. Bd. of Educ. of Yonkers*, 231 F.3d 96, 105 (2d Cir. 2000), *abrogated on other grounds by Schaffer v. Weast*, 546 U.S. 49 (2005); *see also Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383 (2d Cir. 2003) (stating that a court may not choose "between the views of

---

[1] The IDEA was amended in 1997 and re-authorized in 2004 with the provisions of the amended act to become effective in 2005. Because the IEP in question here was formulated in the 2004-2005 school year, we apply the 1997 IDEA and the Vermont Special Education regulations from August 2003, both of which have since been updated.

conflicting experts on a controversial issue of educational policy . . . in direct contradiction of the opinions of state administrative officers who had heard the same evidence").

On appeal, K.L.A.'s parents argue that the district court erred in affirming the Hearing Officer's determination because the meetings to formulate an IEP were procedurally defective on account of the absence of K.L.A.'s regular education teacher—Eric Achenbach, the Applied Media instructor at the Brattleboro Union High School Downtown Campus ("BUHSDC")—at some of the IEP meetings. We disagree. The IDEA, at the time, required that "at least one regular education teacher" of the student be part of the IEP team, 20 U.S.C. § 1414(d)(1)(B), and that the regular educator "shall, *to the extent appropriate*, participate in the review and revision of the IEP of the student," *id.* § 1414(d)(4)(B) (emphasis added). Thus, the mere absence of a regular educator at any given IEP meeting is not a *per se* procedural violation. Rather, the inquiry is whether Mr. Achenbach had attended K.L.A.'s IEP meetings "to the extent appropriate." In concluding that Mr. Achenbach's participation was appropriate under the circumstances, we decline the parents' invitation to reduce the analysis to a strict counting exercise. Notwithstanding the fact that Mr. Achenbach appears to have attended more meetings than the singular meeting the parents would have this Court believe he attended, we do not find persuasive the parents' speculative argument that Mr. Achenbach's increased presence could have led to a different educational placement for K.L.A.. In fact, the parents' affirmative decision to enroll K.L.A. in the reconstituted Applied Media course at Brattleboro Union High School ("BUHS") irrespective of Mr. Achenbach's opinion directly contravenes the parents' argument and suggests that they suffered no prejudice from the absence of Mr. Achenbach's sustained input.

4

We also remain unpersuaded by the parents' argument that they were not afforded the opportunity to weigh in on K.L.A.'s educational placement. The record amply reflects the tremendous amount of access and input the parents enjoyed throughout the IEP-development process. It also starkly demonstrates—as both the Hearing Officer and the district court found—that it was the parents themselves who, by categorically opposing any placement at BUHS (notwithstanding their subsequent decision to enroll K.L.A. in the Applied Media course there) and developing a competing IEP, rendered impossible a fully collaborative experience. In any event, to the extent that the parents' primary grievance arises from the District's specific placement in BUHS's Life Education program, the District's determination is proper under the regulations applicable at the time. *See* Vermont Department of Education Rule 2363.8(e) (2003) (stating that though the IEP team is tasked with determining the "general characteristics of placement," the school district is tasked with selecting the final "specific placement"). Indeed, though the IDEA requires the "educational placement" decision to be made by a group of people including the parents, *see* 34 C.F.R. §§ 300.501(c), 300.502(a)(1), "educational placement" within the meaning of the IDEA does not refer to a specific location or program. *See* U.S.D.O.E. Comments, 71 Fed. Reg. at 46687 (Aug. 14, 2006) ("The Department's longstanding position is that placement refers to the provision of special education and related services rather than a specific place, such as a specific classroom or specific school."); *see also Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. NYC Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980) ("[T]he term 'educational placement' refers only to the general type of educational program in which the child is placed."). Though the parents are afforded input as to the determination of the general characteristics of an appropriate educational placement, they cannot

5

summarily determine a specific placement.

Finally, the parents argue that the district court erred in affirming the Hearing Officer's decision because the proffered IEP failed to provide LRE instruction. Again, we disagree. The IDEA's "least restrictive environment" requirement mandates that:

> [t]o the maximum extent appropriate, children with disabilities . . . [shall be] educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular education environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). In *P. ex rel. Mr. and Mrs. P. v. Newington Board of Education*, 546 F.3d 111 (2d Cir. 2008), we articulated the applicable test for whether an IEP places a student in the least restrictive environment. The test requires that a court consider: (1) whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child, and, if not, then (2) whether the school has mainstreamed the child to the maximum extent appropriate. *Id.* at 120 (citing *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir. 1989)).

*Newington* was not decided until after the district court's determination below, and there was, therefore, no clearly applicable test at that time. Nevertheless, we affirm the district court's determination under *Newington's* intervening test. To the extent that the parents were primarily concerned about disruptive noise at BUHS, it appears that with proper accommodation, the District was capable of providing K.L.A. with a suitably quiet learning environment. More broadly, the Life Program's flexibility would have allowed for an appropriate mix of restricted and unrestricted elements, thereby mainstreaming K.L.A. to the maximum extent appropriate,

satisfying the requirements of K.L.A.'s IEP, and fully complying with the IDEA's LRE mandate. Indeed, as Judge Niedermeier noted, "[the proffered IEP] contained the same elements that all parties agreed had been successful at [BUHSDC]," which the parents identified as adequately LRE. Though the parents appeared to believe that nothing short of fully replicating the BUHDSC program would have been sufficient, the inescapable reality is that the IDEA does not—and indeed, cannot—guarantee everything that a parent might desire for his or her child in an ideal world. *See Tucker v. Bayshore Union Free Sch. Dist.*, 873 F.2d 563, 567 (2d Cir. 1989), *abrogated on other grounds by Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993).

Our review of the administrative record reveals a sustained and substantive engagement between the District and the parents in attempting to formulate K.L.A.'s IEP. We have considered plaintiff's remaining arguments and find them to be without merit. For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7